UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MIKE THOMPSON, § | |
|    Plaintiff § | |
| § | |
| vs. § | CIVIL ACTION NO. C-04-444 |
| § | |
| THE CITY OF ARANSAS PASS, § | |
|    Defendant § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff filed this lawsuit alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, *et seq*., 42 U.S.C. § 1983, and the First Amendment of the United States Constitution. He alleges that his employer, the City of Aransas Pass ("the city"), discriminated against him on the basis of age and also because he exercised his First Amendment right to free speech. Defendant filed a motion for summary judgment on May 2, 2005 (D.E. 13) to which plaintiff did not respond.

## JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1343.

## BACKGROUND

The following facts are taken from the pleadings and exhibits submitted in this case and have been construed in the light most favorable to plaintiff. Plaintiff is a man over the age of 50 who has worked for the city police department since October 1979 (D.E. 1, p. 2). Plaintiff began his career with the city as a patrol officer and was promoted to detective sergeant and then to detective captain in April 1982 and currently works in that capacity (Id.). Plaintiff has received

many awards and citations, including having been selected to attend the Federal Bureau of Investigation National Academy (Id.).

In 2001, the annual Aransas Pass Shrimporee festival was scheduled for September 14 through 16. Two days following the September 11 terrorist attacks, a meeting was held at the Aransas Pass Chamber of Commerce to discuss whether to proceed with the Shrimporee or cancel or postpone it. Despite much opposition, the decision was made to go forward with the festival plans. Plaintiff and a number of other police officers worked at the festival (Id.).

On September 19, 2001 a letter written by plaintiff and signed by him and a number of other police officers, including Darrell Jones, was printed in the local Aransas Pass newspaper. The letter openly criticized the decision to proceed with the Shrimporee and noted that many other events in the nation were canceled or postponed. The letter questioned the motivation behind the decision to hold the festival and opined that money was the motivating factor (Id.; D.E. 13, Ex. 7).

Approximately two weeks later, plaintiff, police chief Melvin Shedd, Sr., and police captain Leroy Grumbles, were called to a meeting by Rick Ewaniszyk, city manager at that time, Karen Gayle, mayor at that time, and city council member Rene Shaw. Shedd and Grumbles had also signed the letter which had appeared in the newspaper. Gayle and Shaw ridiculed plaintiff about the letter and demanded that Ewaniszyk give him a written reprimand, although Ewaniszyk refused to do so (D.E. 1, p. 3).

Almost two years later, in August 2003, police chief Shedd announced his retirement and told plaintiff that the city council was going to name Darrel Jones as acting police chief. Jones was younger than plaintiff and had been trained by plaintiff. When plaintiff asked Shedd why Jones was chosen for the position instead of plaintiff, Shedd told him it was because of the letter about Shrimporee and also because the city council was in a "youthful movement" (Id.).

Jones became interim police chief and on August 28, 2003 he told plaintiff that the "youthful movement" was going to happen and that the mayor Juan Torres and the city council wanted plaintiff and Grumbles to retire from the police force. As part of the youthful movement, Ewaniszyk and Allen Lawrence, the city attorney for 33 years, were fired. Plaintiff and Grumbles were stripped of some of their authority and placed on unfavorable shifts (Id.). In October 2003 Jones was named chief of police. No applications were taken and no interviews were conducted for the position (Id.).

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC') on January 19, 2004 (D.E. 13, Ex. 5). In his affidavit, plaintiff averred that he was not appointed police chief because of his age, 51 at time the position was filled. Jones was in his early 40's. Plaintiff also noted that the city manager who had worked for the City for 18 years and the city attorney who had worked for the city for 33 years had been fired by the city council. In addition, the city council suggested to the city secretary, who had worked for the city for 33 years, that she might want to retire (D.E. 13, Ex. 9). Plaintiff received his "right to sue" letter on May 27, 2004 (D.E. 1, p. 4).

In its motion for summary judgment, the city argues that plaintiff cannot make out a prima facie case and that even if he could, the city has a legitimate, non-discriminatory reason for hiring Jones instead of plaintiff and plaintiff cannot show pretext for discrimination. Defendant further argues that plaintiff cannot make out a First Amendment retaliation claim because there was no causal connection between his exercise of free speech and any adverse employment action and also argues that plaintiff cannot establish that the city had a policy, custom or practice of depriving employees of their First Amendment rights.

## **APPLICABLE LAW**

**A. Summary Judgment Standard**

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  See FED.R.CIV.P. 56(c).  An issue is material if its resolution could affect the outcome of the action.  Daniels v. City of Arlington, 246 F.3d 500, 502 (5th Cir.), cert. denied, 122 S. Ct. 347 (2001).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, drawing all justifiable inferences in favor of the party opposing the motions.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  The Court will not weigh the evidence or evaluate the credibility of witnesses.  Caboni v. General Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The movant bears the initial burden of showing the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  If the movant demonstrates there is an absence of evidence to support the nonmovant's case, the nonmovant must come forward with specific facts showing that there is a genuine issue for trial.  See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356.  To sustain this burden, the nonmovant cannot rest on the mere allegations of the pleadings.  See Celotex, 477 U.S. at 324, 106 S. Ct. at 2553; Caboni, 278 F.3d at 451; FED.R.CIV.P. 56(e).  After the nonmovant has been given

an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. Caboni, 278 F.3d at 451.

**B. Age Discrimination in Employment Act**

"Under the ADEA, it is unlawful for an employer 'to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" Machinchick v. PB Power, Inc., 398 F.3d 345, 349-50 (5th Cir. 2005)(citing 29 U.S.C. §623(a)(1)). In the Fifth Circuit, claims under the ADEA are analyzed in the same manner as Title VII discrimination claims. Bodenheimer v. PPG Industries, Inc., 5 F.3d 955, 957, n. 4 (5th Cir. 1993). The analysis of a Title VII case is well known:

> The plaintiff must establish a prima facie case that the defendant made an employment decision that was motivated by a protected factor. Once established, the defendant bears the burden of producing evidence that its employment decision was based on a legitimate nondiscriminatory reason. The burden then shifts back to the plaintiff to prove that the defendant's proffered reasons were a pretext for discrimination. But, if the defendant has offered a legitimate nondiscriminatory reason for its action, the presumption of discrimination derived from the plaintiff's prima facie case 'simply drops out of the picture,' . . .and 'the ultimate question [is] discrimination *vel non*.'

Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1089-90 (5th Cir. 1995)(citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 246, 253-257, 101 S.Ct. 1089, 1094-95, 67 L.Ed.2d 207 (1981); McDonnell Douglas Corporation v. Green, 411 U.S. 792, 803, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1971)).

The focus then shifts to the ultimate question of whether the defendant intentionally discriminated against the plaintiff. Grimes v. Tx. Dept. of Mental Health, 102 F.3d 137, 140 (5th Cir. 1996)(citing Hicks, 509 U.S. 502, 510-511, 113 S.Ct. 2742, 2749, 124 L.Ed.2d 407 (1993)). Title VII plaintiffs must ordinarily prove their claims through circumstantial evidence and may do

5

so by demonstrating that a defendant's articulated non-discriminatory reason was pretextual. Grimes, 102 F.3d at 141 (citations omitted). A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may, but does not necessarily, permit the trier of fact to conclude that the employer unlawfully discriminated. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id., 530 U.S. at 148-149, 120 S.Ct. at 2109.

   **1. Prima Facie Case**

In order to make out a prima facie case of discrimination on a failure to promote claim, a plaintiff must show (1) that he is a member of the protected class; (2) that he sought and was qualified for the position; (3) that he was rejected for the position; and (4) that the employer continued to seek or promoted applicants with the plaintiff's qualifications. Dallas v. Dallas Area Rapid Transit, 383 F.3d 309, 317 (5th Cir. 2004).

Defendant argues that plaintiff has not made out a prima facie case because he cannot show that he sought the position of police chief. At his deposition, plaintiff testified that he did not submit an application for the position. Plaintiff said that Chief Shedd went to his office in August or September of 2003 and told him that he was going to announce his retirement and also told him that the City Council had made their minds up about a replacement. Shedd mentioned Darrel Jones' name and plaintiff understood him to mean that the City Council had already decided the Jones would be the next police chief (Thompson Depo., D.E. 13, Ex. 6, pp. 21-23).

Within a few days, plaintiff had a conversation with city manager Ewaniszyk who also said that the city council had made up its mind about the chief of police position. When asked whether he told Ewaniszyk that he was interested in the position, plaintiff answered, "I think he pretty much knew I had an interest." (Thompson Depo., D.E. 13, Ex. 6, pp. 23-24). Ewaniszyk subsequently was terminated by the city council and some time after that, Don Taylor, the new city manager, appointed Jones to be the chief of police (Thompson Depo., D.E. 13, Ex. 6, p. 24; Taylor Aff., D.E. 13, Ex. 2, p. 1). Taylor stated in an affidavit that the only person who expressed an interest in the position was Jones, who contacted the city council members individually and also told Taylor that he was interested in the position. Taylor did not know Thompson was interested in the position until he received the EEOC charge (Taylor Aff., D.E. 13, Ex. 2).

On November 2, 2003 the city council voted to approve the city manager's recommendation that Darrell Jones be named chief of police, pending final legal review by the city attorney (Minutes of city council mtg., D.E. 13, Ex. 3b, item 21). On November 11, 2003 plaintiff submitted a letter to the city manager asking to be appointed to the position of police chief. In the letter, plaintiff also complained about the manner in which Jones was hired and stated that he thought he (plaintiff) was not hired because of his age (D.E. 13, Ex. 4).

According to the uncontested evidence in the record, the only person to whom plaintiff expressed an interest about becoming the police chief was Ewaniszyk, who was terminated from his position as city manager prior to the decision being made to hire Jones as chief. Plaintiff did not submit a written request to be appointed chief until after Jones had been hired. Under these facts, plaintiff cannot be found to have sought the position of police chief during the time the position was not filled. Accordingly, he has failed to make out a prima facie case.

**2. Legitimate, Non-Discriminatory Reason**

Even if plaintiff had made out a prima facie case, defendant offered a legitimate, non-discriminatory reason for hiring Jones instead of plaintiff–namely that no one related to the hiring decision knew he was interested in the position. Taylor stated in his affidavit that Jones was the only person who expressed an interest in the chief of police position. Plaintiff never told Taylor or any members of the city council that he was interested in the position. Plaintiff testified that he told Ewaniszyk that he was interested in the position, but Ewaniszyk was no longer the city manager when the final hiring decision was made (Taylor Aff., D.E. 13, Ex. 2; Thompson Depo., D.E. 13, Ex. 6, pp. 22-24). Because defendant has offered a legitimate, non-discriminatory reason for not choosing plaintiff for the position, the burden shifts to plaintiff to present evidence that the reason was a pretext for discrimination.

**3. Evidence of Pretext**

Because plaintiff did not respond to the motion for summary judgment, he did not counter the defendant's legitimate non-discriminatory reason with any evidence of pretext. In his deposition, plaintiff testified that he was told about a situation in which Shaw, a city council member, made comments about the city council needing to move in a younger direction (Thompson Aff., D.E. 13, Ex. 6, pp. 30-31, 33). In plaintiff's EEOC affidavit, he stated that another basis for his belief that age was a motivating factor in his not being chosen for the position was that other long-term employees with the city had been terminated and it was suggested to another long-term employee that she think about retiring (EEOC aff., D.E. 13, Ex. 9, p. 2). Plaintiff's assertions are based entirely on hearsay, and he has offered no competent summary judgment evidence to support

them.  "Evidence on summary judgment may be considered to the extent not based on hearsay or other information excludable at trial."  Fowler v. Smith, 68 F.3d 124, 126 (5th Cir. 1995).

Without more, this evidence is insufficient to overcome the defendant's legitimate, non-discriminatory reason that it did not hire plaintiff because he did not apply for the job.  Accordingly, summary judgment should be entered for defendant on plaintiff's ADEA cause of action.

**C.  Plaintiff's First Amendment Claim**

Plaintiff also claimed that he was not chosen for the promotion because of the letter he wrote criticizing Shrimporee, which plaintiff characterizes as a violation of his First Amendment right to free speech.  Defendant counters that plaintiff cannot show a causal connection between the writing of the letter and his termination.

A public employee may not suffer an adverse employment action for exercising his or her right to free speech under the First Amendment, although only certain speech is protected.  Fowler, 68 F.3d at 125; Harrington v. Harris, 118 F.3d 359, 365 (5th Cir. 1997).  Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands.  Harrington, 118 F.3d at 365 (citing Pierce v. Texas Dep't. of Crim. Justice Inst. Div., 37 F.3d 1146, 1149 (5th Cir. 1994)).

The Fifth Circuit has established a three-part test to determine whether particular speech by a public employee is protected.  First, the speech must have involved a matter of public concern.  Second the public employee's interest in commenting on matters of public concern must outweigh the public employer's interest in promoting efficiency.  Third, the employee's speech must have motivated the decision to take the adverse employment action.  Fowler, 68 F.3d at 126; Lukan v. North Forest ISD, 183 F.3d 342, 346 (5th Cir. 1999), cert. denied, 120 S.Ct. 1420, 146

L.Ed.2d 313 (2000). In this case, it will be assumed that plaintiff's letter was protected speech under the First Amendment.

Nevertheless, although the speech was protected, plaintiff's argument that he was not promoted because he wrote the letter about Shrimporee fails. Jones, who also signed the letter, received the promotion. Plaintiff testified that he thought he was retaliated against because he actually wrote the letter, while Jones just signed it (D.E.13, Ex. 6, pp. 31-32). But this argument is non-sensical. If the city were going to retaliate against someone because they wrote a letter criticizing city policies, it does not make sense that it would simultaneously promote one of its co-signers. Plaintiff cannot create a jury issue regarding retaliation based on these facts.

In addition, plaintiff himself stated in the EEOC affidavit that he did not believe his writing the letter had anything to do with his not receiving the promotion. He wrote:

> I was told by the former City Manager and Chief Shedd that the City Council would not consider me for the position because my wife had previously served on the City Council and because of a letter to the editor I authored, which was printed in the local newspaper after the 9-11 incident. Other police officers and Chief Shedd himself, co-signed the letter. These things occurred some time ago and I do not feel they would have influenced the City Council to such an extent.

(EEOC aff., D.E. 13, Ex. 9, pp. 1-2). Plaintiff is correct that when protected speech is remote in time from alleged retaliatory action it generally does not lead to the conclusion that the speech caused the allegedly retaliatory act. See Horwitz v. Board of Educ. of Avoca School Dist. No. 37, 260 F.3d 602, 619 (7th Cir. 2001)(span of 18 months between publication of article and termination of employee was too long to infer that termination was based solely on the essay); Barnard v. Jackson County, Mo., 43 F.3d 1218, 1226 (5th Cir. 1995)("At some point, the speech becomes so remote in time to the discharge that a court may rule as a matter of law that even if such speech enjoys First Amendment protection, it played no role in the employee's termination.").

Plaintiff has failed to show that a fact issue exists on his First Amendment claim. Accordingly, summary judgment should be entered for defendant.

## RECOMMENDATION

For the reasons set forth above, it is respectfully recommended that defendant's motion for summary judgment (D.E. 13) be GRANTED and that plaintiff's cause of action be dismissed in its entirety.

Respectfully submitted this 7th day of June, 2005.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Services Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).